Do you like to go Du Bois or Dubois? I'll answer either one, Your Honor, but Dubois is probably one I hear most often. Good morning, Your Honor. This is the State Police Court. My name is Alan Dubois, and I represent the appellant in this case, Darnell Black. The fundamental question presented in this case is one of Congressional intent regarding the scope of the application of the Fair Sentencing Act. That is, in sentence modification hearings held pursuant to 18 U.S.C. 3582C proceedings, proceedings that are explicitly designed to remediate the harms caused by the discredited and now defunct crack laws, which mandatory minimums did Congress intend to apply in those proceedings? Did it intend that the mandatory minimums in effect at the time of the defendant's initial sentencing apply, which Congress has specifically repudiated as irrational and racially suspect and overly severe, or did it intend for the FSA amended minimums in effect at the time of the sentence modification proceeding to apply, where those FSA amended mandatories were crafted in tandem with the guidelines that are in effect at the sentence modification hearing? I think an analysis of the Fair Sentencing Act's language and objectives and goals compels the conclusion that Congress intended the latter. It intended the mandatory minimums in effect at the time of the sentence modification hearing apply. And the reason for that, there are several reasons for that. You say modification hearing, 3582? 3582C, yes, sir. Well, we've already said that that only applies to changes in guidelines and not to mandatory minimums. And there's an explanatory note in the statute that says exactly that, and we have that MUM decision that says that. That is correct. How do we get all around all that? I mean, that would be an aggressive reading of 3582, wouldn't it? Your Honor, I don't believe so, and the reason for that is this. 3582C, yes, it does say that you apply the changes to the guidelines, but it doesn't speak to which mandatory minimums in effect. In other words, the mandatory minimums exist outside of the guideline context. That's right. They are something that gets folded in at a later part, but they are not a guideline determination. Congress sets the mandatory minimums. Congress decides where they apply, and Congress's intent in this case. Our decision in MUM held that 3582 applies only to changes in the sentencing guidelines, which are made applicable through the guidelines. And that's what we're asking to occur here. The guidelines, according to Mr. Black, have been reduced from 97 to 121 months. Yeah, but you'd have to get change to the mandatory minimum in this case. You would have to determine which mandatory minimum applies. That's what it gets sized under. And I think it begs the question to a certain extent to say, well, you apply the mandatory minimum initial sentencing because it was the mandatory minimum applied at the initial sentencing. I think you need to take the analysis a little deeper than that and figure out which mandatory minimum did Congress intend, as expressed through its actions in connection with the Fair Sentencing Act and the objectives that it was trying to achieve through that act. Congress clearly intended the Fair Sentencing Act amendments, both the statutory and the guideline amendments, to apply together. So you're saying his mandatory minimum, your client in this case, is changed from 10 to 5? That's correct, Your Honor. As a result of the Fair Sentencing Act? Of the statutory change. That's correct, Your Honor. But that can't be addressed through 3582. That would have to be addressed by a finding that the Fair Sentencing Act was retroactive. Not that it was retroactive, but in which context does it apply? Congress has, the Supreme Court has said in Dorsey, that the new mandatory minimums apply in sentencings that occur after August 3, 2010. I mean, see, this is what the Commission said under 759 that advanced these new guidelines, made them applicable. It is important to note that the inclusion of Amendment 750, Parts A and C, in Section 1B1.10, only allows the guideline changes to be considered for retroactive application. It does not make any of the statutory changes in the Fair Sentencing Act of 2010 retroactive. And it seems to me that a sentencing act is what changed the mandatory minimum from 10 years to 5 years. That's correct. And so that means you can't use 3582, which only goes to a change in the guidelines, which guidelines themselves say won't allow that change. Well, again, Your Honor, I think our position would be that, well, our position is actually twofold or threefold, but the initial position is that the mandatory minimums are correct. They are a creature of Congress. They are a creature of statute. They are not a creature of the guidelines. It's clear that the guidelines in this case have changed. They have been reduced as a result in regard to Ms. Spock. But the important point is they were changed as a result of the change to the mandatory minimums. The commission just doesn't decide how far to reduce the guidelines. Congress, in its wisdom. Well, there were two different changes. But they are changes that are inextricably interlinked. Congress is the one that decided that the ratio of crack to cocaine penalties would be to reduce from 100 to 1 to 18 to 1. And then it gave the commission mandatory and emergency authority to amend the guidelines to bring it in conformity with the changes that Congress itself made. Would your analysis apply to any defendant convicted of a cocaine violation under the 100 to 1 sentencing ratio? I'm sorry. Wouldn't your analysis apply equally to any defendant sentenced with respect to a cocaine violation under the 100 to 1 ratio without temporal limitation? There would still have to be a mechanism in the law to bring that person back into court. Well, but they would simply seek a resentencing. So it would potentially be available across the board without temporal limitation extending back to any defendant ever convicted of a coke violation under the 100 to 1 ratio, would it not? I don't believe that that would necessarily be the case. Well, you'd leave a disparity in there if you did. You do. And the Supreme Court endorsed, he said, there will be inevitable disparities. I thought you were trying to eliminate the disparities. What we're trying to do is minimize the disparities to the greatest extent possible within the bounds of what the law permits. Well, why in answer to Judge Duncan's question, yes. Well, Judge Duncan, our litigant would have to point to a provision of the law, and it could possibly be something— The same ones you're pointing to. In 3582, they were sentenced under a mandatory minimum coke violation way back, and everybody in jail for that would have the same avenue, if you're right. Well, that would certainly be a beneficial outcome, I think. All parties would agree on that. But— Isn't that what the Sixth Circuit ruled in the panel decision that went in bank? That's true. They found an equal protection violation, and certainly that is— Well, was it an equal protection violation or a statutory problem? They found both, actually. But they based the statutory problem on like a constitutional doubt theory. That's correct, Your Honor. But that's been vacated, and it's— And it's been reheard on bank, and it's— It hasn't been decided, right? No, Your Honor. I just got it argued a couple weeks ago. But to answer— But that would have answered the question that Judge Duncan asked you, yes. Probably, because that would have probably opened an avenue through 2255 for these defendants to get released. And they said it affected, what, potentially 17,000 folks? It would affect a large number of people, yes, Your Honor. But to answer Judge Nemar and Judge Duncan's question, no. Not every crack defendant is able to get relief under 3255. To whom would it not apply? Where are your boundaries? Okay. It wouldn't apply to defendants whose amount of drugs were either so high or so low that the amendments to the guidelines didn't affect their guideline range. It wouldn't affect crack defendants who qualify for the career offender enhancement. It wouldn't affect crack defendants whose guideline sentences were driven by guidelines other than the crack guidelines. So there would be a whole— But they would all be entitled to, and probably inevitably would, apply for resentencing to make those determinations? Well, they couldn't apply—well, they could apply. They wouldn't be successful if they applied under 3582C. Again, there may be some other avenue, 2255, or something I haven't thought of. But no, 3582C, we're not asking the court to hold forever and always that every single crack defendant gets to come back into court. All we're saying is if a defendant is eligible for relief under 3582C, as Mr. Black and a number of other defendants are, that when he is having that modification hearing, the law does not clearly state which mandatory minimum applies in that context. And we would argue— It does say that the guidelines that explicitly address 3582 say that it does not cover the change in mandatory minimums. I just read you that provision. That's correct, Your Honor. But, of course, well, there's a couple of responses to that, Your Honor. First off, you know, congressional intent can clearly override whatever the Sentencing Commission says or does. How is that so on the guidelines? There's no statutory term that says 3582 is to govern mandatory minimums. To the contrary, it says it governs only changes in guideline sentencing. 3582C, and I would say 5G 1.1 of the guidelines, neither one— The normal rule of application is the law in effect at the time of the proceeding is the law that applies to the particular defendant. Here, the law in effect at the time of the sentence modification hearing is the five-year mandatory minimum. That—if we follow that normal rule of decision, that gives us our answer. But what further gives us our answer is that to give a separate reading would be to completely undermine and defeat Congress' purpose in passing the Fair Sentencing Act. And are you getting that intent by reading Dorsey? I'm getting a lot of that— That's how you figure that out? A lot of that comes from Dorsey, yes, sir, Your Honor. And I think the— I thought Dorsey acknowledged that there are going to be disparities. It did. It just took care of the factual bridge of conduct before and sentencing after. But it said if the conduct and sentencing were before, there will be disparities. What it also said, though, it said unless there is a way to reopen the sentence. And here there is a mechanism for a certain subset of defendants to have their sentence revisited. Yeah, but if you're stuck—and I think you are stuck with 3582. 3582 gives you a limited overture when a guideline sentence has been changed in the guidelines. It does—but the question you're saying is that also includes statutory minimums. But Congress and the Sentencing Commission have said absolutely not, as have we in MUN, what the next decision we have. Well, I would— I don't know where there's any authority to apply 3582 to statutory minimums created by Congress. It's just the guidelines. I think our position is that 3582C is silent on which mandatory minimum applies. It just simply doesn't address that question. I don't know. Maybe it's because this question hasn't come up. But if you view this— No, it says based—3582 says that you can only modify the sentence based on a sentencing range that has subsequently been lowered by the Sentencing Commission. And this range has been lowered by the Sentencing Commission? No, it has not. I just read to you what the Sentencing Commission said. It only— The Sentencing Commission says we're not lowering the mandatory minimums. Because they can't lower the mandatory minimums. Okay, but that's fair enough, but that doesn't give you a benefit. But that doesn't say which mandatory minimum applies. You're absolutely right, Your Honor. Congress—I mean, the Sentencing Commission couldn't say, Congress has said the mandatory minimum is X. We're going to say it's Y, and amend the guidelines that way. But that sort of begs the question of which congressionally sanctioned mandatory minimum applies in these cases. And let me just say, if I could just get to this point— I don't understand how you can read around this. I think— It does not make any of the statutory changes in the Fair Sentencing Act retroactive. But what we would argue is this is not a retroactive application. We are here in a current proceeding for a current— Well, it's got to be, because he was sentenced already. So we're modifying the sentence. Now his sentence is being—that's correct. Now his sentence is being modified. Right. So as of this point, as of this current— That's correct. And as of this current modification, which law applies? The rejected law or the current law? And our argument would be this. Well, that's too general, because 3582 addresses only changes based on the sentencing range that have been lowered by the Sentencing Commission. And that range— The Sentencing Commission has not lowered the mandatory minimum. The mandatory minimum, though, applicable in these hearings, now does not roadblock the change that the Sentencing Commission did authorize and which Congress, frankly, sanctioned and knew would be applied in this context. And, Your Honor, I would just like to say that the failure to read the FSA as a unified whole, as each part's applying, where one provision applies, the other needs to apply, creates completely absurd results. It benefits only the most culpable egregious defendants whose drug quantity and criminal activity was so high that they are well above the mandatory minimum. Those guys under 3582C get sentenced under an 18 to 1 ratio. Defendants who are less culpable, who deal a smaller amount of drugs, closer to the old mandatory minimum, are roadblocked. They are sentenced under a 100 to 1 ratio. Now, what possible purpose could Congress have had of instituting this type of regime, specifically against the backdrop of their legislative findings that the 100 to 1 ratio was overly severe, empirically suspect, and racially discriminatory? It just beggars belief that that's what they intended, to make the worst defendants get the benefit of the change, but not the least culpable. In your view, Dorsey overrules all of Bullard? What do you mean by all, Your Honor? Well, Bullard held that FSA reductions in mandatory minimums do not apply retroactively, and Dorsey allowed it to apply who were yet to be sentenced when the FSA became effective. I guess, Your Honor, my answer would be this. Well, yes or no would do for a start. I would say, no, I can't say Dorsey specifically overruled Bullard only because Dorsey was not confronted with this particular subset of defendants. I think the logic of Dorsey certainly would lend itself to a conclusion that the mandatory minimums apply wherever the FSA guidelines apply. How do we get around our circuit precedent? Yeah, it's circuit precedent. What about Mazzone? I think Mazzone applies to, I think, a clearly distinguishable factual situation. I think Bullard, I think this panel could certainly read Dorsey, and I know one of the reasons why one panel can revisit the decision of another panel is— Overruled by implication or something? Overruled by implication, that's correct. By Dorsey. By Dorsey. So we have to say, you'd have to say, I think you'd have to answer that question, that Bullard is no longer controlling because of Dorsey. I think that's correct, Your Honor. And you say Mazzone is— Mazzone is distinguishable? Mazzone is distinguishable. I thought it was right on the money. Well, if I may have one second, Your Honor. The reason why Mazzone is distinguishable from both Dorsey and this— It was kind of brief. It was one paragraph there.  Mazzone had no— But it's right on the money. Mazzone had already been sentenced and had no way back into court. That distinguishes him from Dorsey, who have a way into court by virtue of the initial sentencing, and by Black and others like him who have a way back into court by 3582C. So Mazzone's case was effectively dead for litigation purposes in a way that the defendants in Black and in Dorsey were not, and therefore the holding— All Mazzone really held was that where the old guidelines apply, so too must the old mandatory minimums, and that's what happened. Except Mazzone addressed Dorsey and basically indicated that Dorsey was only a partial relief for persons in those factual circumstances, conduct before, sentence after. That's correct. It left in place Bullard. That's correct, Your Honor, and I see my time is up. But just to answer your question, again, Mazzone is factually and legally distinguishable. Mazzone's posture, where he was in his case, is distinguishable both from Dorsey and from Black in that he had no avenue to get back into court in the ways that both of these sets of defendants did. So I've reserved a little bit of time for rebuttal, Your Honor. Okay. Thank you. All right. Ms. Watford-McKinney. Good morning, Your Honor. May it please the Court. My name is Yvonne Watford-McKinney. I represent the United States. And, Your Honor, I hear by the tenor of the Court's questions that the Court understands the government's argument here, and that is that 3582C, a proceeding under that statute, although the defendants' amendments to the sentencing guidelines are applicable to the defendant, he is not able to benefit because he was sentenced to a mandatory minimum. And 3582C and 1B1.10 specifically exclude him because he was sentenced to a mandatory minimum sentence. And the FSA does nothing to destroy that mandatory minimum sentence. The guidelines do nothing. I thought it changed the quantities that would fit him into the five-year category. If this Court reads the mandatory minimum, the law that was in effect at the time of the proceeding the way counsel does, then yes. But the law in effect at the time of the proceeding is the original proceeding, and that was his original sentence. And he was sentenced based on the fact that he had 50 grams or more of crack cocaine, which subjected him to a 10-year mandatory minimum sentence. But the Supreme Court in Dorsey was pretty clear they wanted everybody to be treated the same. No. You don't think so? I don't, Your Honor. What I believe is that the Supreme Court said there are going to be disparities, and the Supreme Court said we have to live with some of those disparities. But the congressional intent was to treat everybody the same. They found that. It was. But the Court recognized that whenever there is a change, there's going to be some persons who benefit and some persons who don't. And Dorsey says that Congress had to draw a line, and I believe that line was in favor of finality. And the Court, as a result, said that we're going to have to live with some disparities. So those defendants who were sentenced. But they specifically didn't deal with this category. They more than once. That is true. Explained who they were dealing with, and it doesn't include folks like Mr. Black. Well, Your Honor, I think the Supreme Court gave a hint of where it was going here. Well, it gave Warren a hint. I mean, it spelled it all out, didn't it? It did. But with respect to the issue. I mean, there was a split in it. There's no question it was a 5-4 decision. I mean, you don't take a position that makes any difference. We have to stick with the majority, don't we? That's correct. And, Your Honor, if I can point to what Dorsey says, at 2235 of 132 Supreme Court, it says, We also recognize that application of the new minimums to pre-act offenders sentenced after August 3rd will create a new set of disparities. But those disparities reflecting a line-drawing effort will exist whenever Congress enacts a new law changing sentences. Actually, Judge King's question cuts both ways. If the Supreme Court was clear that it did not apply to Mr. Black here, then it can't have overruled Bullard, I would think, to the extent that it would. So you run it under that logical sequence into another problem. Do you not? Was my question clear? Shall I start over? No, Your Honor. I think that's possible. I think it's possible to interpret it. Yes. I would think you'd want to say yes. I mean, the government position there, you probably ought to say yes. But that's up to you. Maybe you. If you want to argue with my favorable interpretation, have at it. I don't, Your Honor, but maybe I'm not understanding the court's question. Well, your brief cites Bullard for the proposition that the FSA is not retroactively applicable to sentences imposed before its effective date. Yes. That's your proposition. Yes. And you cite for that Muzzone? Yes. And Bullard. Two cases on page 17. And we have asked about both of them. And I believe that is true. I believe that that is right. Mr. DeVos says one of them is distinguishable and the other has been overruled. Well, Your Honor. I think I may be mischaracterizing the position, but that's the way I recall it. Bullard has not been overruled. Well, that was what my question was. I'm sorry, Your Honor. I misunderstood. That's the issue that Judge Duncan asked you. Yes. Your answer to that has to be, it hasn't been overruled. You're saying it's valid. Bullard has not been overruled. In its entirety. Yes. That is still the law of this circuit. And we're bound by it. That's your position. We're bound by it. That is our position. But this court is bound. And Dorsey seems to say it explicitly. It says, we consequently conclude that this particular new disparity created by this opinion, between those pre-act offenders already sentenced and those not yet sentenced as of August 3, cannot make a critical difference. And that is what Dorsey told us. They're just leaving it in place. They have to recognize that when you draw a line, the difference was that it was pretty murky, people who had conduct before and who had not yet been sentenced. And now you have an act to pass prospectively. They said those sentences will be under the FSA. That's correct. But with respect to those sentenced before the effective date of the act, they say there's a disparity and it's not a critical difference. And that is correct. Well, maybe they intend to fix it in the next case. They're just pointing it out and making it clear what they're dealing with in that case. And they're reserving that issue for the next case. Because most of the circuits, it looks like, are going your way, except out there in the sixth. And they went the other way, but they're rehearing it. Well, that is correct, Your Honor. I understand that there's going to be another case and they're going to deal with that particular issue. My point was that I think that there's kind of a forecast here in the language, and I think that that forecast is in favor of finality. Well, does it matter? Well, it doesn't really matter. If you agree that they're going to deal with it in the next case, then our precedent has to stand, doesn't it? That's correct. That is correct. If the Court has any questions, I'd be glad to. Thank you very much. Thank you. All right. Mr. DuBois. Thank you, Your Honor. If I can just address the issue about the Dorsey language about creating other disparities. If you read that paragraph carefully, what they're talking about, they're talking about the Mouzon defendant, the defendant whose case is over and done with. Unless Congress specifically provides a way to read it. They're talking explicitly about the person who has been sentenced before the effective date of the FSA. That's correct. That's the Mouzon defendant, not the person who. That's your defendant. Your defendant was sentenced before the effective date of the act. So you have to get under. 3582C. Dorsey's not going to give it to you. The best way you can get under it is 3582. That's correct. 3582 is limited to changes made by the Sentencing Commission. The Sentencing Commission in its changes, which it made applicable, explicitly excluded changes to the mandatory minimum. So I don't know where you get the authority except through 3582. And 3582 is a narrow channel. Well, I think we get it through an interaction of 3582 and the FSA. Because you're right, Your Honor. The Sentencing Commission has no authority to change the mandatory minimums. Congress can. And I think this is a situation where, and I think the whole panel has recognized, the Supreme Court made clear, Congress has made clear, Congress wants this relief to apply absolutely as broadly as it possibly can within the bounds of whatever legal restraints exist. So the rule of lenity, the rule of applying remedial relief as broadly as possible, should certainly be the backdrop against this panel's decision making. There is no doubt that Congress wants people like Mr. Black to not be punished under the 101 ratio that they have explicitly said is defunct, has been repudiated. But you start with the proposition that when Congress makes laws, they operate prospectively. That's the presumption. Unless Congress indicates explicitly, it's going to make them retroactive. The question answered in Dorsey was a blurred situation because the sentencing had not yet occurred. So that's addressed in that case. But other than that, it clearly did not apply on its face to cases before the act was passed. So I don't know how we apply it retroactively unless Congress manifests its intent in the statute. I think one of the tricky words is the word retroactive. And I guess my position would be this. Defendants who are eligible for relief under 3582C, their sentences are not being changed retroactively. They are being changed in accordance with a change in the law. That's just word talk. He's already been sentenced. He's in jail. He's serving 10 years. But it's important word talk because it distinguishes, it puts defendants such as Mr. Black on a closer footing to defendants such as in Dorsey. It's a policy position adopted by Congress that says if the commission lowers a sentencing range, then you can go to 3582 and get the benefit of it. And Congress is well aware, Congress ratified that change. That is limited to a sentencing range in the statute and in the language of the commission, both of them. And we have our decision in MUN that says the very same thing. And you'd have to overrule that decision too, right? I don't think so, Your Honor. I think these are questions that have not been squarely presented to you, any panel of this court. Not squarely presented. It said changes to the mandatory minimum are not included in 3582. Isn't that what it holds? Yes, but not in the context of this particular change where the guideline amendments were directly and completely a product of the statutory change. As I say, the Sentencing Commission was not acting on its own initiative here. They were acting in response to the change that was enacted by Congress and they were drafted in conformity with those changes. So it would be an odd result for Congress to say we're changing these statutory penalties and, Sentencing Commission, you change these to bring them in conformity and consistency with this applicable law. But then to say, but then don't apply it in conformity and consistency with this applicable law. Apply it in connection with some other law that we've specifically repudiated. Our position is that that's a nonsensical result that Congress could not have intended and, as Dorsey suggested, did not intend and therefore we would ask that you apply, given that there's no specific direct impediment to the contrary, apply, interpret 3582C and the FSA in a way that best effectuates Congress's clear intent and apply the mandatory minimum in effect at the time of the modification hearing in these circumstances. I hear your argument. And if you're right, then it seems to me you're asking us to re-sentence everybody in Mr. Black's situation who's been sentenced previously and who's now currently in jail. Only those who would be otherwise eligible under 3582C in this case. Well, I understand, but that's the vast majority of people in jail under cocaine trafficking. It's in fact not, Your Honor. We've been litigating this case for the last three or four months and in addition to Mr. Black, currently we have 44 other cases that we have sought relief under 3582C and have lost because of this exact issue. Is this in your district? This is in our district. So circuit-wide it'd be more than that. There'd be more than that, but it's not every defendant. It's a fairly large class. I mean, this affects a lot more than Mr. Black. It does, and again, this is a feature, not a bug of the change in the law. Congress wanted this relief to be applied broadly because the crack laws were so unjust and unethical. It's going to apply to everybody who's previously been sentenced. I think what they have said, I think by fair implication, is that wherever the FSA amended guidelines apply, so too should the FSA mandatory minimums apply. And where do you get that out of the language of the Fair Sentencing Act? I get that out of the Supreme Court's analysis in Dorsey, which is that's specifically what they said. Except Dorsey doesn't say that at all. Dorsey's confronted with the problem about they start with a proposition that the act operates prospectively, and so the question is if the conduct is before and the sentencing is after the act, is the sentencing after that governed by an act that changes sentencing? That's clearly the fact situation they were dealing with, Your Honor. I'm just saying the same logic. But that's all they dealt with, and they recognized that by ruling the way they did, they're going to still leave the disparity that exists before a statute's amended, before and after. They were not saying that we are going to leave disparities that are avoidable in place. They're saying there may be certain situations where the disparity is unavoidable. This is a purely avoidable disparity that can be cured by reading the FSA in conjunction with 35A2C and applying the mandatory minimum in a way that Congress would desire. If Congress said we're going to eliminate all sentencing disparities, they would have said that. They would have put it, it's so easy to put it in there, and they didn't put it in there. Well, in fact, I think that's a fair reading of what they did do in the legislative history. They clearly rejected the old crack laws wholesale, and so for that reason, we would ask that you apply the FSA in a manner that we think is most consistent with the will of Congress and effectuate the aims of Congress in passing the FSA. And we'd ask that it apply at this point. How many cases do we have to say are overruled by implication? Bullard and Munn? Mazzone? Well, I mean, I know I'm droning on. Mazzone was after Dorsey. Right. I know I'm droning on. No, it's to get to your position. I think Bullard is the primary case I think that Dorsey affects. Munn perhaps as well, but, you know, I would have to go back and look at that more carefully. Okay. Thanks, Your Honor. Thank you very much. We'll come down.
judges: Paul V. Niemeyer, Robert B. King, Allyson K. Duncan